IN RE THE MATTER OF                    )    CIVIL ACTION NO. 88-169C
                                       )
                                       )
ROBERT G. DUNCAN.                      )         ORDER
_____        )

## FACTS

On the morning of March 1, 1988 Robert Duncan (Duncan) was arrested for disturbing the peace at the Joeten Shopping Center in Susupe. He was subsequently examined by Dr. Ruth Dickson, a psychiatrist at the Commonwealth Health Center.

Later that afternoon Duncan was brought before the court pursuant to a Petition for Commitment filed by the CNMI. At this hearing, Duncan was represented by counsel from the Public Defender's Office. Testimony at the hearing by Dr. Dickson indicated that Duncan likely suffered from chronic schizophrenia and psychosis. Dr. Dickson further testified that Duncan's illness caused him to be a danger to himself although she was not of the opinion, based on her previous examination, that he posed an imminent danger to society. The court then found that Duncan posed a significant danger to himself and ordered that he be committed to the Mental Health Division of the Commonwealth Health Center for a period of 30 days commencing March 1, 1988.

386

On March 28, 1988 Protection and Advocacy for the Mentally Ill (PAMI), through counsel, moved to intervene as Amicus Curiae in this action in order to challenge the constitutionality of the CNMI civil commitment laws, 3 CMC §§ 2511 et seq under which Duncan was committed.

Duncan was discharged from the Commonwealth Health Center on March 30, 1988. At a follow up hearing that same day, Dr. Dickson testified that Duncan no longer appeared to be a danger to himself.

## MOOTNESS

Duncan has been released from the Commonwealth Health Center and is no longer under temporary commitment pursuant to 3 CMC § 2511 et seq.

In general a case becomes "moot" when the parties lack a legally cognizable interest in the outcome. Murphy v. Hunt, 445 U.S. 478, 482, 102 S.Ct. 1181, 1183 (1982). The party contending that a case is moot must bear the heavy burden of demonstrating facts underlying that contention. Princeton Community Phone Book, Inc. v. Bate, 582 F.2d 706, 710 (3rd Cir. 1978), cert. den. 439 U.S. 966, 99 S.Ct. 454. Controversies which are capable of repetition, yet evading review are an exception to the general rule of mootness. ITT Rayonier, Inc. v. U.S., 651 F.2d 343, 346 (5th Cir. 1981). Satisfaction of this test requires the combination of two elements: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the

387

same complaining party would be subject to the same action again. Johansen v. San Diego County Dist. Council of Carpenters, 745 F.2d 1289, 1292 (9th Cir. 1984). Both prongs of this standard must be met to avoid mootness. Williams v. Alioto, 549 F.2d 136, 145 (9th Cir. 1977).

Initially in this case, the petitioner stipulated at oral argument that the issue of the constitutionality of the CNMI commitment statute was not moot. However, in order for this court to have competent jurisdiction in this matter there must be a case in controversy. With regard to Duncan's situation, the court finds that despite the fact that his 30 day involuntary commitment has terminated, Duncan's case falls within the "capable of repetition yet evading review" exception to the mootness doctrine. As Dr. Dickson has testified, Duncan's particular illness is one that will worsen and then improve depending upon a variety of factors. There appears to be a reasonable expectation then that Duncan will again face the prospect of involuntary commitment. Also, since short term commitment seems to be the appropriate treatment for Duncan's condition, any future commitments would likely be short-term. Finally, since Duncan was only committed for a short period of time it is the finding of the court that, in this particular case, the duration of Duncan's commitment was too short a time period in which to fully litigate the issues presented here. Therefore, this action is not moot by virtue of the expiration of Duncan's term of commitment.

The CNMI's civil commitment laws are found at 3 CMC §§ 2511 et seq. PAMI has sought a declaratory judgment that these civil commitment provisions are unconstitutionally vague and overbroad as they fail to provide standards requiring clear and convincing evidence of mental illness or imminent danger to self or others, fail to provide procedural due process through adequate notice, fail to recognize right to treatment and freedom from restraints, give vague guidelines or criteria for release, and fail to strike a balance that meets both the substantive and procedural due process standards.

When a state court is dealing with a state statute challenged as overbroad, it should construe the statute to avoid constitutional problems if the statute is subject to such a limiting construction, and such a construction is binding on a federal court. New York v. Ferber, 458 U.S. 747, 771, 102 S.Ct. 3348, 3361, (1982); U.S. v. Thirty Seven Photographs, 402 U.S. 363, 369 91 S.Ct. 1400, 1404 (1971). Further, when a statute has been judicially interpreted and applied to a set of facts, such application provides due process notice and precludes an attack on the basis of vagueness. State v. Pickett, 589 P.2d 16, 19 (Ariz. 1978), citing Wainwright v. Stone, 414 U.S. 21, 94 S.Ct. 190 (1973).

1.  Procedural Due Process.

Petitioner has raised several issues relating to procedural due process in court proceedings pursuant to 3 CMC §§ 2511 et seq.

**389**

Due process in connection with the involuntary civil commitment of persons pursuant to mental health laws requires that the person sought to be committed receive at minimum the following procedural safeguards:

(A) Adequate prior notice.

(B) Prior hearing before a neutral judicial officer.

(C) The right to effective assistance of counsel.

(D) The right to be present at the hearing.

(E) The right to cross-examine witnesses and to offer evidence.

(F) Adherence to the rules of evidence applicable in criminal cases.

(G) The right to assert the privilege against self-incrimination.

(H) Proof beyond a reasonable doubt.

(I) A consideration of less restrictive alternatives.

(J) A record of the proceedings and written findings of fact.

(K) Appellate review.

(L) Periodic examination of the basis for confinement.

Suzuki v. Quisenberry, 411 F.Supp. 1113, 1127 (D.C. Haw. 1976).

(A) Adequate Prior Notice.

Petitioner contends that 3 CMC S 2512 does not provide for adequate procedural due process in that, while providing specifically for notice to family members, it does not require notice to the person sought to be committed. The court,

**390**

however, has construed and will continue to construe § 2512 as requiring sufficient notice to the person sought to be committed so that reasonable opportunity to prepare will be afforded. In the present case, Duncan was given notice of the hearing in accordance with the established practice of the court.

(B) **Prior hearing before a neutral judicial officer.**

3 CMC §§ 2512 and 2513 clearly provide that the court may commit an individual only "after hearing."

In the instant case, as in all previous commitment cases, a hearing was held before a neutral judicial officer.

(C) **The right to effective assistance of counsel.**

It is clear that the right to effective assistance of counsel is a well-established element of due process in civil commitment proceedings. Heryford v. Parker, 396 F.2d 393, 396 (10th Cir. 1968). An individual sought to be involuntarily committed must be informed of his right to counsel, that counsel must be appointed if the individual cannot afford counsel, and that counsel must be made available far enough in advance of the hearing to provide adequate opportunity for preparation. Suzuki v. Quisenberry, supra, at 1129.

In construing the term "hearing" in 3 CMC §§ 2512 and 2513, this court has and will continue to interpret this term as meaning a constitutionally sufficient hearing complete with the right to effective counsel, otherwise the hearing would be of little or no value. In this action Duncan was provided with effective counsel.

(D) The right to be present at the hearing.

Likewise the term "hearing" as used in the civil commitment statutes must necessarily include the right of the person sought to be committed to be present unless the individual's behavior at the hearing makes it impossible to conduct the hearing in a reasonable manner. See, Bell v. Wayne County Gen. Hospital, 384 F.Supp. 1085, 1094 (E.D. Mich. 1974).

In Duncan's case, he was present at the hearing. The court has and will continue to construe a hearing as including the right of the individual sought to be committed to be present.

(E) **The right to cross-examine witnesses and offer evidence.**

The right to effective counsel necessarily includes the right to cross-examine witnesses and to offer evidence. Without these basic tools, counsel could not be effective. Since persons sought to be committed have a right to counsel and the right to cross-examine witnesses and offer evidence are concomitant with the right to effective counsel, the CNMI civil commitment statutes are not deficient in this regard.

In the current proceeding, Duncan's counsel had the right to cross-examine witnesses and offer evidence and actively did so. Likewise previous commitment proceedings before this court have included this fundamental right.

(F) **Adherence to the rules of evidence applicable in criminal cases.**

As Suzuki v. Quisenberry, supra, at 1130, notes, "the rules of evidence ... should not be rejected in any judicial

**392**

inquiry." Any constitutionally sufficient hearing would mandate that the court adhere to the rules of evidence. In *Duncan's case the court did so.*

**(G) The right to assert the privilege against self incrimination.**

In the context of civil commitment the privilege against self-incrimination means that the state may not commit an individual on the basis of statements to examining psychiatrists in the absence of a showing that the statements were made voluntarily after the individual was informed of and understood the purpose of the examination and that he was not obliged to speak. It does not mean that psychiatrists cannot talk to a patient for purposes of treatment. It does not mean that evidence cannot be adduced as to the patient's statements in a non-inquisitorial setting. Suzuki v. Quisenberry, supra, at 1131-1132.

In interpreting the right to a "hearing" in 3 CMC, S 2511, et seq. to mean a constitutionally sufficient hearing the right to assert the privilege against self-incrimination is, and has been, necessarily included in that term, and was therefore present in the instant case.

**(I) Proof beyond a reasonable doubt.**

The standard of proof required to prove that an individual is committable may be either (1) by a preponderance of the evidence, Suzuki v. Quisenberry, supra, at 1132, or (2) by clear and convincing evidence, Lynch v. Baxley, 386 F.Supp.

393

378, 393 (Md. Ala. 1974), or (3) beyond a reasonable doubt, Lessard v. Schmidt, 349 F.Supp. 1078, 1095 (E.D. Wis. 1972).

Although 3 CMC § 2512 indicates that prior to committing an individual testimony "shall establish to the satisfaction of the court that the person is insane," the standard of proof adopted is one of clear and convincing evidence. This also applies to temporary commitments under 3 CMC § 2513 and was employed in Duncan's case.

The CNMI civil commitment statutes provide for the commitment of "insane" persons. Obviously, the state cannot involuntarily commit a person solely upon a finding that he or she is mentally ill or insane. O'Connor v. Donaldson, 422 U.S. 563, 575, 95 S.Ct. 2486, 2493 (1975). Due process considerations mandate that the proof show either (1) dangerousness to self or (2) dangerousness to others be shown before a person may be involuntarily committed for mental illness. O'Connor v. Donaldson, id.

In Duncan's case the court questioned Dr. Dickson at length regarding any perceived danger to himself or others by virtue of his condition. Although Dr. Dickson did not feel that Duncan posed a danger to others, she was of the opinion that he did present a significant danger to himself. In describing this danger, Dr. Dickson noted that Duncan appeared to be subject to hallucinations and as he spent a significant amount of time walking along Beach Road, a heavily travelled thoroughfare, there was a significant danger that he would be struck by a motor vehicle.

**394**

In interpreting and applying the CNMI Involuntary Civil Commitment statutes then, the court has, and will continue to, view the ward "insane" as it is used therein to mean constitutionally insane.

> (J) A record of the proceedings and written findings of fact.

In all commitment proceedings including Duncan's, the court has recorded all court proceedings in their entirety. The court will concede, however, that, at least in this case, the order of commitment was devoid of specific findings of fact. However, in order to insure a constitutionally sufficient hearing in all commitment cases the court will make written findings of fact pursuant to all future civil commitment orders.

> (K) Appellate review.

Although appellate review of civil commitment orders is certainly desirable, it may not be constitutionally mandated. Suzuki v. Quisenberry, supra, at 1133, citing Griffen v. Illinois, 351 U.S. 12, 20, 76 S.Ct. 585, 591 (1956) (concurring opinion of Justice Frankfurter). In any event, 1 CMC S 3301 provides appellate review of any final judgment or order.

> (L) Periodic redeterminations of the basis for confinement.

Although temporary commitments for up to 30 days under 3 CMC S 2513 would not seem to require another commitment hearing for redetermining the basis for confinement, Suzuki v. Quisenberry, supra, at 1134, longer terms of commitment would appear to necessitate periodic redeterminations as to the

**395**

committed individual's condition.  O'Connor  v.  Donaldson, supra, at 2494.

As the CNMI civil commitment statutes authorize that only the "insane" may be involuntarily committed, periodic review as to the condition of committed individuals is essential to a determination that they are indeed still "insane."

In sum, the court will narrow the word "hearing" as contained in 3 CMC § 2511 et seq., to mean a constitutionally sufficient hearing necessitating inclusion of the above-mentioned procedural due process safeguards.

2.   Rights to treatment and freedom from restraints.

PAMI alleges that § 2512 is defective as the standard of dangerousness with respect to restraints is ambiguous and overbroad.   PAMI further contends that § 2512 fails to consider a committed person's right to treatment.

Section 2511 mandates that treatment of committed individuals shall be carried out.   In Duncan's case treatment was given and, in the court's opinion, was highly successful. In analyzing 3 CMC § 2511 et seq., this court construes the term "treatment" as used therein to include the committed individual's right to medical care and treatment, in addition to food, clothing, shelter and safety.   See, Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452 (1982).

PAMI maintains that the language of 3 CMC § 2512 allowing the Commonwealth Health Center to "restrain the insane person to the extent necessary for that person's safety and that of the public" is defective as there is no requirement that such

**396**

dangerousness be imminent or based on recent overt acts, attempts or threats, nor does § 2512 require consideration of less restrictive alternatives to restraint.

Section 2512 allows for restraint only to the extent necessary for the individual's safety or that of the public. In determining the necessary extent of any restraint, less restrictive alternatives to complete bodily restraint must be considered, as it may be determined that complete bodily restraint is unnecessary to provide for the individual's or public's safety. What is sufficient restraint or whether restraints are needed at all in any particular case is determined by the committed individual's behavior. In Duncan's case, no restraints were necessary. Therefore, the court will construe the term "restraints" as used in 3 CMC § 2511 et seq. to mean only those restraints necessary to protect the committed individual or the public based upon that individual's recent actions.

3. Conclusion.

PAMI objects to the court's construing the statute for commitment of mentally ill persons so that it comports with constitutional standards. It claims that it is judicially legislating and that the only solution is for the court to strike down the statute and leave the matter at the doorstep of the legislature.

This approach is rejected. Not only is the court able to narrowly construe 3 CMC § 2511 et seq. but it has, for all

397

practical purposes, been applying these statutes in a constitutional manner.

To accept PAMI's proposition is to throw the baby out with the bath water. If the statute is stricken and a mentally ill murderer is captured, the logical extension of PAMI's argument is that he must be released pending the enactment of legislation. Such a result is neither reasonable nor required.

All parties concerned in this matter and the court are interested in one thing -- providing for a constitutionally sound involuntary commitment procedure for mentally ill persons. By utilizing the processes used by the court, this has been accomplished without creating the crisis PAMI advocates and without, of course, barring the legislature to construct a new statute after due deliberation and input from all knowledgeable sources.

The motion of amicus curiae is denied.

Dated at Saipan, MP, this 25 day of April, 1988.

_____
Robert A. Hefner, Chief Judge